Robert B. Carey (SBN 011186)
John M. DeStefano (SBN 025440)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email:  rob@hbsslaw.com
        johnd@hbsslaw.com

*Attorneys for Plaintiff*

*[Additional counsel on signature page]*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Jesus Caballero,<br><br>                Plaintiff,<br><br>v.<br><br>Economy Preferred Insurance Company, et al.,<br><br>                Defendants. | Nos.   CV-22-02023-PHX-MTL<br>           CV-22-01820-PHX-MTL<br>           CV-24-01267-PHX-MTL<br>           CV-24-01270-PHX-MTL<br><br>[Consolidated]<br><br>**PLAINTIFFS' CONSOLIDATED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF THE SETTLEMENT CLASS**<br><br>(Honorable Michael T. Liburdi) |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.    PROCEDURAL HISTORY ................................................................................ 1

    A.    Related Case History ............................................................................. 1

    B.    Present Case History and Mediation ..................................................... 4

III.    SUMMARY OF SETTLEMENT TERMS ...................................................... 10

    A.    The Settlement Class ........................................................................... 10

    B.    The Settlement Consideration, Release of Claims, and Anticipated Class Recovery ............................................................... 11

    C.    Attorneys' Fees and Costs, Incentive Awards, and Administration Costs ........................................................................... 12

    D.    Notice and Implementation of Settlement ........................................... 15

    E.    Plan of Distribution ............................................................................. 16

IV.    ARGUMENT .................................................................................................. 17

    A.    The Class should be certified for the purposes of settlement. ............. 18

        1.    The Settlement Class is sufficiently numerous. ............................. 18

        2.    Questions of law and fact are common to the settlement class ................................................................................. 19

        3.    Plaintiffs' claims are typical of the Settlement Class's claims. ......................................................................................... 20

        4.    Plaintiffs and Class Counsel are adequate representatives. ............................................................................. 21

        5.    Common questions of law and fact predominate under Rule 23(b) ..................................................................................... 22

    B.    The proposed settlement should be preliminarily approved. ............... 25

        1.    The settlement is the result of arm's-length negotiations. ................................................................................. 26

2.      The settlement has no obvious deficiencies. ..................................... 27

3.      The proposed settlement does not grant preferential treatment to Plaintiffs or segments of the Settlement Class. ...................................................................................... 28

4.      The settlement falls within the range of possible approval. ....................................................................................... 29

5.      The experience and views of counsel weigh in favor of preliminary approval. ........................................................ 30

C.      The Proposed Class Notice and Plan for Dissemination Comply with Rule 23(e) ..................................................................... 30

D.      Proposed Schedule for Dissemination of Notice and Final Approval ............................................................................................ 33

V.      CONCLUSION ................................................................................. 33

MOTION FOR PRELIMINARY APPROVAL

# TABLE OF AUTHORITIES

Page(s)

Cases

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013)................................................................................. 22, 23

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018)..................................................................... 29

*In re Apple Inc. Device Performance Litig.*,
   No. 5:18-MD-02827-EJD, 2021 WL 1022866 (N.D. Cal. Mar. 17, 2021) ........... 14, 15

*In re Bluetooth Headset Prods. Liability Litig.*
   654 F.3d 935 (9th Cir. 2011) ......................................................................... 28

*Brian Dorazio v. Allstate Fire and Casualty Ins. Co.*,
   Case No. CV-23-00017-PHX-JJT (D. Ariz.)....................................................... 2

*Bublitz v. E.I. du Pont de Nemours and Co.*,
   202 F.R.D. 251 (S.D. Iowa 2001) .................................................................... 19

*Caballero v. Economy Preferred Insurance Company*,
   CV2-22-012824 ECF No. 1-3 (D. Ariz. Nov. 28, 2022) ..................................... *passim*

*Caroline C. By & Through Carter v. Johnson*,
   174 F.R.D. 452 (D. Neb. 1996) ...................................................................... 19

*Charles Miller v. Trumbull Ins. Co.*,
   Case No. CV-22-01545-PHX-JJT (D. Ariz.)....................................................... 2

*Chase Whitehead v. Amica Mutual Ins. Co*,
   Case No. CV-22-01978-PHX-DJH (D. Ariz.)...................................................... 2

*Churchill Vill., LLC v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ......................................................................... 31

*Craig Hacker v. American Family Insurance Co.*,
   Case No. CV-22-01926-PHX-DLR (D. Ariz.) ..................................................... 2

*Crystal Lopez v. Liberty Mutual Personal Ins. Co.*,
   Case No. CV-23-00629-PHX-DLR (D. Ariz.) ..................................................... 2

*Daniel Capane v. LM General Ins. Co., et al.*,
   Case No. CV-24-01095-PHX-SMB (D. Ariz.)..................................................... 2

*Doyle v. Pekin Ins. Co.*,
    Case No. 2:22-cv-00638-JTT (D. Ariz.) .......................................................... 2

*Franklin v. CSAA Gen. Ins. Co.*,
    255 Ariz. 409, 532 P.3d 1145 (2023) .................................................... 4, 27

*Franklin v. CSAA General Insurance Co.*,
    No. CV-22-00540-PHX-JJT ................................................................. *passim*

*Heaton v. Metro. Grp. Prop. & Cas. Ins. Co.*,
    No. CV-21-00442-PHX-SRB, 2021 WL 6805629 (D. Ariz. Oct. 19,
    2021) ............................................................................................................ 1

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ...................................................................... 23

*Jennifer Dale, et al. v. Travelers Property Casualty Ins. Co.*,
    Case No. CV-22-0659-PHX-SPL (D. Ariz.) .................................................. 2

*Jodi Moshier v. Safeco Ins. Co. of America*,
    Case No. CV-23-00225-PHX-DLR (D. Ariz.) ............................................. 2

*Julian v. Swift Transportation Co. Inc.*,
    No. CV-16-00576-PHX-ROS, 2020 WL 6063293 (D. Ariz. Oct. 14,
    2020) .......................................................................................................... 15

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) .................................................................... 24

*Kleiner v. First Nat. Bank of Atlanta*,
    102 F.R.D. 754 (N.D. Ga. 1983) ........................................................... 16, 31

*Knapper v. Cox Commc'ns, Inc.*,
    329 F.R.D. 238 (D. Ariz. 2019) .................................................................. 18

*Lisa A. Nutt v. Nationwide Ins. Co. of America, et al.*,
    Case No. CV-24-02228-PHX-ROS ............................................................. 2

*McClure v. State Farm Life Ins. Co.*,
    341 F.R.D. 242 (D. Ariz. 2022) ................................................... 20, 23, 25

*Morgan Muehlhausen, et al. v. Allstate Fire and Casualty Ins. Co.*,
    Case No. CV-22-01747-PHX-JAT (D. Ariz.) ............................................. 2

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................... 30

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir) ................................................................................ 23, 24

*In re Pharm. Indus. Average Wholesale Price Litigation*,
    582 F.3d 156 (1st Cir. 2009) ................................................................... 24

*Rannis v. Recchia*,
    380 F. App'x 646 (9th Cir. 2010) ........................................................... 19

*Reid v. I.C. Sys. Inc.*,
    No. CV-12-02661-PHX-ROS, 2018 WL 11352039 (D. Ariz. July 27,
    2018), *aff'd*, 795 F. App'x 509 (9th Cir. 2019) .................................... 30

*Shirly Haenfler v. Safeco Ins. Co. of America*,
    Case No. 2:23-cv-00822- PHX-JJT (D. Ariz.) ........................................ 2

*Sonoma Sol LLLP v. Truck Ins. Exch.*,
    No. CV-20-00069-PHX-DJH, 2021 WL 5238711 (D. Ariz. Nov. 9,
    2021) ...................................................................................................... 15, 28

*Stacey Trent v. Hartford Insurance Co. of the Southeast*,
    Case No. CV-23-02105-PHX-JJT (D. Ariz.) .......................................... 2

*In re Theranos, Inc. Litigation*,
    Case No. 2:16-cv-2138-DGC (D. Ariz. Feb. 6, 2024) ............................ 15

*Tinsley v. Faust*,
    No. CV-15-00185-PHX-ROS, 2020 WL 6048315 (D. Ariz. Oct. 13,
    2020) ...................................................................................................... 29

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ............................................................................ 22, 23

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
    445 F. Supp. 3d 508 (N.D. Cal. 2020) .................................................. 13

*Winkler v. DTE, Inc.*,
    205 F.R.D. 235 (D. Ariz. 2001) ............................................................ 18

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ........................................................... 19, 25

*Zwicky v. Diamond Resorts Inc.*,
    No. CV-20-02322-PHX-DJH, 2024 WL 1717553 (D. Ariz. Apr. 22,
    2024) ...................................................................................................... 14, 25

MOTION FOR PRELIMINARY APPROVAL

*Zwicky v. Diamond Resorts Mgmt. Inc.*,
    343 F.R.D. 101 (D. Ariz. 2022) ............................................................................ *passim*

**Statutes**

A.R.S. § 20-259 ....................................................................................................... *passim*

Class Action Fairness Act, 28 U.S.C. § 1711 *et seq.* ...................................................... 16

**Other Authorities**

2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196-197 (5th ed.
    2012) ............................................................................................................................. 22

Arizona Rule of Civil Procedure 23 ............................................................................... 7

Arizona Rules of Professional Conduct Rule 4.2 .......................................................... 31

Federal Rule of Civil Procedure 23 ....................................................................... *passim*

Federal Rule of Civil Procedure 30 ............................................................................... 8

*Newberg on Class Actions* § 3:12 (5th ed.) .................................................................. 18

MOTION FOR PRELIMINARY APPROVAL

1

## I.    INTRODUCTION

2   Plaintiffs Jesus Caballero, Charles Creasman, Brynley Wilhelm, and Richard Luna

3   (collectively, the "Plaintiffs"), respectfully move this Court to: (1) certify the Settlement

4   Class; (2) appoint Plaintiffs Caballero, Creasman, Wilhelm, and Luna as the Class

5   Representatives for the Settlement Class; (3) appoint Robert Carey of Hagens Berman

6   Sobol Shapiro, LLP as Lead Class Counsel for the Settlement Class; (4) preliminarily

7   approve the class action settlement between Plaintiffs and Defendants Economy Preferred

8   Insurance Company ("Economy Preferred"), Farmers Casualty Insurance Company f/k//a

9   Metropolitan Casualty Insurance Company ("Farmers"), Economy Premier Assurance

10  Company ("Economy Premier"), and Farmers Group Property and Casualty Insurance

11  Company f/k/a Metropolitan Group Property and Casualty Insurance Company ("Farmers

12  Group" (collectively "Defendants" or the "Farmers Defendants");[1] and (5) direct notice

13  to the Settlement Class. This Motion is based on Federal Rule of Civil Procedure 23, the

14  supporting declarations, and the evidence and arguments presented in the briefs and at

15  any hearing on this Motion to be set by the Court.

16

## II.    PROCEDURAL HISTORY

17  **A.    Related Case History**

18  In October 2021, Judge Bolton ruled in favor of the insured plaintiffs in *Heaton v.*

19  *Metropolitan Group Property & Casualty Co.*, holding that Arizona law required the

20  insurer to stack uninsured motorist ("UM") and underinsured ("UIM") motorist

21  coverages under multi-vehicle policies if the insurer fails to follow the requirements of

22  A.R.S. § 20-259.01(H), in which case the insureds could collect the policy limits on each

23  insured vehicle. No. CV-21-00442-PHX-SRB, 2021 WL 6805629, at *8 (D. Ariz. Oct.

24  19, 2021).

25

26

27  ───────────────

[1] The Settlement Agreement is attached as Exhibit 1. Plaintiffs adopt and use the
28  definitions in the Settlement Agreement in this Motion.

MOTION FOR PRELIMINARY APPROVAL

In April 2022, Class Counsel Hagens Berman filed *Franklin v. CSAA General Insurance Co.*, No. CV-22-00540-PHX-JJT, alleging the same theory against CSAA. *Franklin* was one of sixteen cases filed by Class Counsel Hagens Berman and the Slavicek Law Firm (collectively "Class Counsel") in the 2022-2024 timeframe alleging this theory of liability. Those parallel suits were filed against Allstate, Liberty Mutual, Safeco, Travelers, American Family, Pekin Insurance, Amica, Hartford, Trumbull, Farmers Insurance, Nationwide, and the Farmers Defendants in the four cases consolidated here.[2]

Class Counsel spent significant time and resources investigating the theory, legislative history, and industry information, as well as *Franklin* and the related cases, all with the intention of coordinating litigation efforts across the cases. *See* Ex. 2, November 27, 2024 Decl. of Robert B. Carey ISO Mot. for Prelim. Approval ("Carey Decl.") ¶ 3.

*Franklin* became a standard-bearer for the parallel cases because it begat a Supreme Court ruling affecting all the others. Citing the multiplicity of pending suits that presented the same UM/UIM stacking question, Judge John Tuchi certified two questions to the Arizona Supreme Court in *Franklin*:

> (1) Does A.R.S. § 20-259.01 mandate that a single policy insuring multiple vehicles provides different underinsured

---

[2] *Morgan Muehlhausen, et al. v. Allstate Fire and Casualty Ins. Co.*, Case No. CV-22-01747-PHX-JAT (D. Ariz.); *Brian Dorazio v. Allstate Fire and Casualty Ins. Co.*, Case No. CV-23-00017-PHX-JJT (D. Ariz.); *Shirley Haenfler v. Safeco Ins. Co. of America*, Case No. 2:23-cv-00822-JJT; *Crystal Lopez v. Liberty Mutual Personal Ins. Co.*, Case No. CV-23-00629-PHX-DLR (D. Ariz.); *Jodi Moshier v. Safeco Ins. Co. of America*, Case No. CV-23-00225-PHX-DLR (D. Ariz.); *Charles Miller v. Trumbull Ins. Co.*, Case No. CV-22-01545-PHX-JJT (D. Ariz.); *Stacey Trent v. Hartford Insurance Co. of the Southeast*, Case No. CV-23-02105-PHX-JJT (D. Ariz.); *Craig Hacker v. American Family Insurance Co.*, Case No. CV-22-01926-PHX-DLR (D. Ariz.); *Taylor Doyle v. Pekin Ins. Co.*, Case No. 2:22-cv-00638-JTT (D. Ariz.);*Chase Whitehead v. Amica Mutual Ins. Co*, Case No. CV-22-01978-PHX-DJH (D. Ariz.); *Jennifer Dale, et al. v. Travelers Property Casualty Ins. Co.*, Case No. CV-22-0659-PHX-SPL (D. Ariz.). *Daniel Capane v. LM General Ins. Co., et al.*, Case No. CV-24-01095-PHX-SMB (D. Ariz.); and *Lisa A. Nutt v. Nationwide Ins. Co. of America, et al.*, Case No. CV-24-02228-PHX-ROS.

MOTION FOR PRELIMINARY APPROVAL

motorist (UIM) coverages for each vehicle, or a single UIM coverage that applies to multiple vehicles?

(2) Does A.R.S. § 20-259.01(B) bar an insured from receiving UIM coverage from the policy in an amount greater than the bodily injury liability limits of the policy?

2022 WL 16631090, at *2–3 (D. Ariz. Nov. 2, 2022) ("This is the first-filed of eleven known, present actions—four in the District Court and seven in Maricopa County Superior Court—that turn on the resolution of the same question.").

On February 21, 2023, Class Counsel Hagens Berman filed Franklin's Supplemental Brief Regarding Certified Questions with the Arizona Supreme Court. Carey Decl. ¶ 4. The defendant in *Franklin* also filed a supplemental brief that same day. *Id.* ¶ 5. In response to that briefing, four insurance companies and two insurance groups filed a total of five amicus briefs in support of CSAA, totaling seventy-four pages of briefing. *Id.* ¶ 6. The Farmers Defendants were among the insurance companies that filed an amicus brief in the *Franklin* matter. *Id.* Class Counsel Hagens Berman filed a combined response to all five amicus briefs, which consisted of thirty-eight pages of additional briefing. *Id.* ¶ 7. Class Counsel at the Slavicek Law Firm, on behalf of separate multiple represented plaintiffs, including Plaintiffs Jesus Caballero and Charles Creasman filed a separate amicus brief. *Id.* ¶ 8. The Arizona Supreme Court held oral argument on the certified questions on April 18, 2023. *Id.* ¶ 9. John DeStefano of Hagens Berman argued those certified questions before the court. *Id.* ¶ 10.

On July 28, 2023, the Arizona Supreme Court answered the certified questions in favor of plaintiff:

We hold that § 20-259.01 mandates that a single policy insuring multiple vehicles provides different UIM coverages for each vehicle. Notwithstanding creative policy drafting intended to evade statutory requirements—including technical definitions of coverages and extensive limitation of liability clauses—insurers seeking to prevent insureds from stacking UIM coverages under a single, multi-vehicle policy must employ subsection (H)'s sole prescribed method for limiting

MOTION FOR PRELIMINARY APPROVAL

> stacking. We also hold that § 20-259.01(B), by its plain
> language and non-stacking function, does not bar an insured
> from receiving UIM coverage from the policy in an amount
> greater than the bodily injury or death liability limits of the
> policy.

*Franklin v. CSAA Gen. Ins. Co.*, 255 Ariz. 409, 532 P.3d 1145, 1146–47 (2023). The

court explained that although the text of A.R.S. § 20-259.01 is "ambiguous, . . . the

statute's history and purpose clearly indicate that multi-vehicle policies provide separate

UIM coverages for each vehicle." *Id.* at 1148. The court went even further than the

certified questions to find that subsection (H) provides "the sole means by which insurers

may limit UIM/UM stacking" and "to limit stacking under subsection (H), insurers must

(1) expressly and plainly limit stacking in the policy and (2) satisfy the notice

requirement informing the insured of their 'right to select one policy or coverage' either

in the policy itself or in writing to the insured within thirty days after the insurer is

notified of the accident." *Id.* at 1148, 1151 (quoting A.R.S. § 20-259.01(H)). The court

concluded:

> In answering the certified questions, we hold that (1) § 20-
> 259.01's text, history, and purpose provide that an insured
> covered by a multi-vehicle policy has necessarily "purchased"
> multiple UIM coverages for each vehicle under subsection
> (H); thus, rather than employing singular definitions of
> "coverage" in their policies, insurers must comply with the
> statute's requirements in order to prevent insureds from intra-
> policy stacking; and (2) § 20-259.01(B) does not limit UIM
> coverage.

*Id.* at 1153.

## B.    Present Case History and Mediation

While *Franklin* was pending but before this Court certified questions to the

Arizona Supreme Court—Plaintiffs Caballero and Creasman filed their actions in

Maricopa County Superior Court. Notice of Removal, *Caballero v. Economy Preferred

Insurance Company*, CV2-22-012824 ECF No. 1-3 (D. Ariz. Nov. 28, 2022); Notice of

Removal, *Creasman v. Farmers Casualty Insurance Company*, 2:22-cv-01820 ECF No.

1-3 (D. Ariz. Oct. 24, 2022). Like the plaintiff in *Franklin*, the Plaintiffs' claims relate to stacking UM and UIM coverage. For example, Plaintiff Caballero alleges that he was injured in a collision on June 6, 2020, that his injuries led to medical expenses in excess of $850,000, and that the non-party at fault was underinsured. Compl., *Caballero*, 2:22-cv-02023 ECF No. 1-3 ("*Caballero* Compl.") ¶¶ 7–12. At the time of the collision, Caballero was an insured under an Economy Preferred policy insuring four vehicles, with UM coverage of $15,000 per person and an aggregate limit of $30,000 per collision. *Id.* ¶ 18. On November 20, 2020, Caballero submitted a claim to Economy Preferred for UIM benefits on the Economy Preferred policy. *Id.* ¶ 28. Economy Preferred paid Caballero $15,000—the policy limits on one of the vehicles—but did not pay any claims for coverage on the other three vehicles. *Id.* ¶¶ 29-30. Caballero alleges that Economy Preferred failed to comply with the notice requirements of A.R.S. § 20-259.01(H). *Id.* ¶¶ 34–35. Specifically, Caballero alleges that the limitation-of-liability policy language did not inform him that coverage could not be stacked or of his right to select which coverage would apply. *Id.* ¶ 33-34. Caballero also alleges that within 30 days of receiving notice of the collision, Economy Preferred did not provide him written notice of his right to select which coverage would apply. *Id.* ¶ 35. Caballero alleges because Economy Preferred did not inform him of his right to select which coverage would apply, he was entitled to stack coverage for both vehicles. *Id.* ¶ 36.

Similarly, Plaintiff Creasman alleges that he was injured in a collision on August 20, 2016, that his injuries led to medical expenses in excess of $500,000, and that the non-party at fault was underinsured. Second Amended Compl., *Creasman*, 22-cv-01820 ECF No. 30 ("*Creasman* Compl.") ¶¶ 7–14. At the time of the collision, Creasman held a Farmers policy insuring four vehicles, with UM coverage of $500,000 per person and an aggregate limit of $500,000 per collision. *Id.* ¶ 14. On January 8, 2019, Creasman submitted a claim to Farmers for UIM benefits on the Farmers policy. *Id.* ¶ 21. Farmers paid Creasman $500,000—the policy limits on one of the vehicles—but did not pay any claims for coverage on the other three vehicles. *Id.* ¶¶ 22-23. Creasman alleges that

MOTION FOR PRELIMINARY APPROVAL

Farmers failed to comply with the notice requirements of A.R.S. § 20-259.01(H). *Id.* ¶¶ 43-44. Specifically, Creasman alleges that the limitation-of-liability policy language did not inform him that coverage could not be stacked or of his right to select which coverage would apply. *Id.* Creasman also alleges that within 30 days of receiving notice of the collision, Farmers did not provide him written notice of his right to select which coverage would apply. *Id.* ¶ 45. Creasman alleges because Farmers did not inform him of his right to select which coverage would apply, he was entitled to stack coverage for both vehicles. *Id.* ¶ 46.

After the Arizona Supreme Court issued its decision in *Franklin*, Plaintiffs Wilhelm and Luna filed their actions in the Ariona District Court. Plaintiff Wilhelm alleges that she was injured in a collision August 13, 2021, that her injuries led to medical expenses in excess of $435,000, and that the non-party at fault was underinsured. First Amended Compl., 2:24-cv-1270-PHX ECF No. 9 ("*Wilhelm* Compl.") ¶¶ 22-28. At the time of the collision, Wilhelm held an Economy Premier policy insuring five vehicles, with UM coverage of $100,000 per person and an aggregate limit of $300,000 per collision. *Id.* ¶ 29. On September 16, 2022, Wilhelm submitted a claim to Economy Premier for UIM benefits on the Economy Premier policy. *Id.* ¶ 33. Economy Premier informed Plaintiff Wilhelm that only $100,000 in coverage was available—the policy limits on one of the vehicles—but did not inform her of her right to recover additional monies on the other four vehicles. *Id.* ¶¶ 34-35. Wilhelm alleges that Economy Premier failed to comply with the notice requirements of A.R.S. § 20-259.01(H). *Id.* ¶¶ 35-38. Specifically, Wilhelm alleges that the limitation-of-liability policy language did not inform her that coverage could not be stacked or of her right to select which coverage would apply. *Id.* Wilhelm also alleges that within 30 days of receiving notice of the collision, Economy Premier did not provide her written notice of her right to select which coverage would apply. *Id.* ¶ 42. Wilhelm alleges because Economy Premier did not inform her of her right to select which coverage would apply, she was entitled to stack coverage for both vehicles. *Id.* ¶¶ 39-44.

Plaintiff Luna alleges that he was injured in a collision on October 29, 2020, that his injuries led to medical expenses in excess of $25,000, and that the non-party at fault was underinsured. Compl., *Luna*, 2:24-cv-01267 ECF No. 1 ("*Luna* Compl.") ¶¶ 22-28. At the time of the collision, Luna held a Farmers Group policy insuring two vehicles, with UM coverage of $25,000 per person and an aggregate limit of $50,000 per collision. *Id.* ¶ 29. On January 8, 2019, Luna submitted a claim to Farmers Group for UIM benefits on the Farmers Group policy. *Id.* ¶ 34. Farmers Group paid Luna $25,000—the policy limits on one of the vehicles—but did not pay any claims for coverage on the other covered vehicle. *Id.* ¶ 36. Luna alleges that Farmers Group failed to comply with the notice requirements of A.R.S. § 20-259.01(H). *Id.* ¶¶ 38-43. Specifically, Luna alleges that the limitation-of-liability policy language did not inform him that coverage could not be stacked or of his right to select which coverage would apply. *Id.* Luna also alleges that within 30 days of receiving notice of the collision, Farmers Group did not provide him written notice of his right to select which coverage would apply. *Id.* ¶ 42. Luna alleges because Farmers Group did not inform him of his right to select which coverage would apply, he was entitled to stack coverage for both vehicles. *Id.* ¶ 43.

The Plaintiffs all brought claims for breach of contract and breach of the implied covenant of good faith and fair dealing, seeking declaratory relief, direct and consequential damages, and punitive damages. *Caballero* Compl. ¶¶ 44–64; *Creasman* Compl. ¶¶ 39-77; *Wilhelm* Compl. ¶¶ 75-90; *Luna* Compl. ¶¶ 85-100. The Plaintiffs generally sought to certify nearly identical classes of similarly situated individuals under Arizona Rule of Civil Procedure 23(b)(2) and (b)(3): (1) insureds with UM claims under an Arizona policy issued by one of the Farmers Defendants that insured more than one vehicle who were paid the UM policy limits on one vehicle on the policy, but where the Farmers Defendants either failed or refused to pay UM benefits on any other vehicles on the policy; and (2) insureds with UIM claims under an Arizona policy issued by one of the Farmers Defendants that insured more than one vehicle who were paid the UIM policy limits on one vehicle on the policy, but where the Farmers Defendants either failed

or refused to pay UIM benefits on any other vehicles on the policy. *Caballero* Compl. ¶¶ 121–122; *Creasman* Compl. ¶¶ 107-108; *Wilhelm* Compl. ¶ 64, 70-71; *Luna* Compl. ¶¶ 72-73. The parties in *Caballero* and *Creasman* commenced discovery after *Franklin* was decided. ECF Nos. 26, 27; Creasman ECF Nos. 42, 43.[3]

The parties engaged in significant discovery. In the *Caballero* matter, Plaintiff issued fifteen requests for production, twenty-three interrogatories to Economy Preferred, and one request for admission. Carey Decl. ¶ 11. Economy Preferred issued nine requests for production and eight interrogatories to Plaintiff Caballero. *Id.* ¶ 12. As part of this discovery, Economy Preferred produced over 800 documents totaling over 10,000 pages—including policy forms, claims handling practices and procedures, internal correspondence regarding compliance, and claim file documents—which the undersigned counsel has reviewed. *Id.* ¶ 13. Plaintiff Caballero also issued a Rule 30(b)(6) deposition notice and deposed two corporate witnesses for Economy Preferred on topics ranging across Economy Preferred's claims handling practices, its policy language, its understanding of the duties of insurers in Arizona, and the structure and availability of insurance claim-related data maintained by Economy Preferred in the ordinary course of its insurance business. *Id.* ¶ 14. Plaintiff also deposed Economy Preferred's claim adjuster who handled evaluation and payment for Plaintiff's UM/UIM claim. *Id.* ¶ 15. And in *Creasman*, Plaintiff issued, and Farmers Casualty answered 22 interrogatories, 15 Requests for Admission, and 44 Requests for Production. *Id.* ¶ 16. Plaintiff Creasman also noticed and was preparing to take a Rule 30(b)(6) deposition and two fact witness depositions before the parties agreed to mediate as set forth in more detail below. *Id.* ¶ 17. Each of the Farmers Defendants has produced extensive data regarding the claims of putative class members and claim payments in other UM/UIM and bodily injury claims.

---

[3] Because both *Luna* and *Wilhelm* were both in the early stages of the litigation when the parties reached agreement, no formal discovery has taken place beyond discovery on the class data needed for settlement and the experts' damages models. Carey Decl. ¶ 18.

MOTION FOR PRELIMINARY APPROVAL

*Id.* ¶ 19. Plaintiffs' counsel and their damages expert reviewed and developed a damages model from this data. *Id.*

Plaintiffs also undertook substantial expert discovery in connection with all of this evidence. Carey Decl. ¶ 20. Starting with the *Caballero* matter, a damages and statistics expert analyzed the claim-related data and produced an expert report setting forth Plaintiff Caballero's damages methodology, which was disclosed to Economy Preferred in accordance with the case schedule. *Id.* ¶ 21. An expert on insurance standards and practices also analyzed the evidence in this case and produced an expert report in support of Plaintiff Caballero's allegations that the bad faith claim could be proven on a classwide basis, using common evidence. *Id.* ¶ 22. This report was disclosed to Economy Preferred in accordance with the case schedule. *Id.* ¶ 23.[4]

Over several days, Plaintiff Caballero and Economy Preferred participated in settlement discussions with the assistance of respected mediator the Hon. Wayne Andersen (ret.). *Id.* ¶ 24. The parties negotiated over the amount of a common fund and on May 24, 2024, the parties were able to agree on the key terms of a settlement. *Id.* ¶ 25. The parties filed a Notice of Settlement that day. ECF No. 77. The parties then entered into the final Settlement Agreement on August 14, 2024. ECF No. 86-1 (*Caballero* Agreement). Plaintiff Caballero then moved for preliminary approval of the settlement and Economy Preferred filed a notice of non-opposition. ECF Nos. 86-88. While the *Caballero* Preliminary Approval Motion was pending, the same counsel held a full-day mediation session on September 11, 2024, in an attempt to reach an agreement on potential class-wide resolution in *Wilhelm*, *Creasman*, and *Luna*. Carey Decl. ¶ 26. On that day, the parties to all three actions came to an agreement in principle that would resolve all four actions. *Id.* ¶ 27. Because of this global settlement, the parties jointly

---

[4] Plaintiffs Creasman, Wilhelm, and Luna retained an expert to perform a nearly identical analysis with data provided in those cases. That information, described herein, was used to facilitate the settlement discussions. *See infra* Section III.B.

MOTION FOR PRELIMINARY APPROVAL

moved to vacate the *Caballero* preliminary fairness hearing, which the Court vacated. ECF Nos. 90-91.

While the parties negotiated in good faith, they moved to transfer *Creasman*, *Wilhelm*, and *Luna* before this Court and consolidate the actions; the parties' motions were granted. ECF Nos. 92-94, 100. The Court also held a status conference, where it ordered the *Caballero* Motion for Preliminary Approval withdrawn. ECF No. 100, On November 27, 2024. the Parties entered into the Settlement Agreement and agreed to settle all four actions for $11,600,000. *See* Settlement Agreement attached as Exhibit 1. The Settlement Agreement supersedes the *Caballero* Agreement.

### III.    SUMMARY OF SETTLEMENT TERMS

**A.    The Settlement Class**

The settlement encompasses the proposed "Settlement Class," which the parties agree includes:

> All persons identified in Exhibit A, which roughly includes all persons  (a) insured under a policy issued by Defendants in Arizona that contained the UM Endorsement or UIM Endorsement and provided UM Coverage or UIM Coverage for more than one motor vehicle; (b) who made a claim for UM Coverage or UIM Coverage during the Class Period; and (c) who (i) received a claim payment equal to the limit of liability for the UM or UIM benefits for one vehicle, or (ii) who were one of multiple claimants in a claim related to a single incident, where the aggregate total paid on the claim was equal to the per incident limit of liability for the UM Coverage or UIM Coverage for one vehicle

Ex. 1, Settlement Agreement ¶ 23 & Ex. A thereto. Each "Settlement Class Member" is identified on Exhibit A, which includes all known persons who fall within the definition of the Settlement Class. *Id.* ¶ 24. This settlement resolves the claims of what is understood to be the complete universe of those who could bring a stacking claim, so the release and payments due are limited to those insureds known to the parties. Carey Decl. ¶ 28.

**B.    The Settlement Consideration, Release of Claims, and Anticipated Class Recovery**

The Settlement releases the Farmers Defendants from all claims for those Class Members identified in Exhibit A, based on the facts alleged in the Complaint in exchange for a common fund of $ 11,600,000.00, less any reduction for exclusions as described below (the "Settlement Fund").[5] Settlement Agreement. ¶¶ 40-44.

Class Counsel have developed extensive statistical evidence and other proof confirming that this settlement amount is fair, reasonable, and adequate in relation to the projected value of the insurance claims themselves. Carey Decl. ¶ 29. Class Counsel will submit additional proof during the final approval process but applying a conservative methodology—the lower bound of the mixed model—Plaintiffs' statistics expert estimated classwide damages of $9,094,400.00. *Id.* ¶ 30. Even this establishes the fairness of the settlement. Class Counsel, with the assistance of experts, previously estimated counterfactual settlement payments using statistical techniques such as Kaplan–Meier, two variations of Weibull data, log-rank analysis, curve analysis and maximum likelihood estimation of censored claim data. *Id.* ¶ 31. This experience shows that there is a strong relationship between unpaid loss and the available insurance funds. *Id.* ¶ 32. Moreover, this relationship varies by claim time and individual insurance limit. When this relationship is applied to class data, the estimated amount that would have been paid to class members, had the appropriate limits been applied, is approximately $9.094 million. *Id.* ¶ 33. This Settlement will, at least under one reliable approach, provide each Settlement Class Member approximately 128% of the benefits they would have received had their claims been adjusted under the stacked policy limits at the time of their losses, instead of being capped by the single limit. *Id.* ¶ 34.

In making this settlement, Class Counsel considered the risks of going to trial including the possibility that a trial could result in a smaller or zero recovery for the

---

[5] The claims released include breach of contract and breach of the covenant of good faith and fair dealing.

MOTION FOR PRELIMINARY APPROVAL

Settlement Class, the time and resources that would be expended by both parties and the Court, and the possibility of delay caused by any appeal if Plaintiffs did prevail. There are other risks that reduce some class members' entitlements, including untimeliness issues and release issues. And while Plaintiffs may have recovered more at trial, there is always a risk of losing at trial (even with a meritorious case) for any number of reasons. *Id.* ¶ 35. There are also risks relating to admissibility of evidence and class certification. *Id.* ¶ 36. Awards of interest and punitive damages are at the jury's discretion, as is the amount of compensatory damages awarded, even if the proof is compelling. Even if Plaintiffs prevail at trial, the delay and other financial risks of an appeal are still considerable, and appeals are commonplace in insurance cases. *Id.* ¶ 37. Finally, early resolution of this case avoids significant litigation costs and expert fees, greater attorneys' fees, and further loss of the time value of money on any recovery. *Id.* ¶ 38.

**C.    Attorneys' Fees and Costs, Incentive Awards, and Administration Costs**

Because this is a common fund settlement, the costs of notice and distribution, attorneys' fees and costs, and the service award for the Class Representatives will be paid out of the Settlement Fund. Through November 25, 2024, Class Counsel has advanced costs of $72,720.55 and will not seek more than $200,000 in costs, which account for the possibility of an appeal. *Id.* ¶ 39. Class Counsel will request a fee award of up to 30% of the total Settlement Fund. *Id.* ¶ 40.

When awarding fees under a common fund in the Ninth Circuit, courts generally start with the 25% benchmark and adjust upward or downward depending on:

(1)    The extent to which class counsel achieved exceptional results for the class;

(2)    Whether the case was risky for class counsel;

(3)    Whether counsel's performance generated benefits beyond the cash fund;

(4)    The market rate for the particular field of law (in some circumstances);

(5)    The burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work); and

(6)    Whether the case was handled on a contingency basis.

*In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 519 (N.D. Cal. 2020) (quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015)), *aff'd*, 845 F. App'x 563 (9th Cir. 2021). Class Counsel's work and success in this case merits an upward adjustment of 5%, for a total fee of 30%. Private counsel entering into a contingent fee agreement for these types of cases (breach of contract and insurance bad faith in the context of an automobile injury) routinely request and receive (as expert testimony will show) a fee of 40% of the gross recovery achieved. Class Counsel's skill and effort, not only in this novel and risky case but also in *Franklin*, produced an extraordinary result. The *Franklin* decision confirmed that multiple coverages existed and could be stacked under a single insurance policy insuring multiple vehicles—the threshold issue in this case. Beyond this, Class Counsel's skill and expertise in developing the law, evidence, and analysis to secure class certification made this settlement possible. The settlement permits every class member to receive a significant recovery without even knowing about the harm to their interests or having to retain private counsel and engage in a one-sided battle with their own insurer. Class Members will pay less than the established rate for a recovery devoid of the friction and unpleasantness that can accompany litigation. Class Counsel will more fully support their request, including detailing the relevant circumstances of the *Wells Fargo* factors, in their motion for attorneys' fees.

In moving for attorneys' fees, there will be a single fee request made in this case by Class Counsel and its team that worked on the case—there will not be multiple or competing fee requests that would require the assistance of a fee committee or special master. Moreover, the common fund payment is a discrete, negotiated cash benefit that is easily ascertained. Class Members will have ample information about the fee request and benefits produced by the efforts of counsel, as Plaintiffs' proposed Notice includes the amount of fees and maximum amount of costs Class Counsel will seek as well as the total recovery. Under Plaintiffs' proposed schedule, the fee motion will be filed thirty days before the objection deadline and may be requested from Class Counsel for the Class

Members to review. Given the known market for attorney's fees in relation to the recovery obtained for UM/UIM claims, class members have solid insights into what a reasonable fee is in the circumstances.

Given the nature of this case and the desire to be efficient while affording sufficient information to ascertain the appropriateness of a fee award, the optional procedures set forth in LRCiv 54.2(j) are seemingly unnecessary here. With the Court's permission, Plaintiffs propose to substantiate counsel's work for the class using task- and counsel-based time records as is typical for cross-check purposes in common fund cases. "[T]he district court need not inquire into the reasonableness of fees with the same level of scrutiny as when the amount of fees is litigated." *Zwicky v. Diamond Resorts Inc.*, No. CV-20-02322-PHX-DJH, 2024 WL 1717553, at *5 (D. Ariz. Apr. 22, 2024) (*quoting Wood v. Ionatron, Inc.*, 2009 WL 10673479, at *5 (D. Ariz. Sept. 28, 2009) (*citing Staton v. Boeing Co.*, 327 F.3d 938, 966 (9th Cir. 2003))). The purpose of the percentage-of-the-fund method is to reduce "the burden on the courts that a complex lodestar calculation requires," and instead allows courts "to focus on showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel." *In re Apple Inc. Device Performance Litig.*, No. 5:18-MD-02827-EJD, 2021 WL 1022866, at *2 (N.D. Cal. Mar. 17, 2021) (citations omitted). As the percentage-of-the-fund is appropriate in this case, and the Court only need perform a lodestar crosscheck, detailed billing records would increase the time expended without improving the ability to assess the proper percentage. Plaintiffs will provide, for each attorney who worked on the case, both summaries of the general tasks performed and the amount of time each attorney billed, consistent with recent class settlements in this District and Circuit.[6] Plaintiffs will also provide a breakdown of all the task codes used in this case, identifying the number of hours spent on each task code. This will allow the Court to easily and accurately perform the lodestar

---

[6] *In re Theranos, Inc. Litigation*, Case No. 2:16-cv-2138-DGC (D. Ariz. Feb. 6, 2024) (approving fee award, including Hagens Berman's and Mr. Carey's fees).

cross check without burdening the Court or Class Counsel with unnecessary time and expense. *Id.* at *2 (noting that the percentage-of-the-fund method reduces "the burden on the courts that a complex lodestar calculation requires").

For a service award, Class Counsel will also seek an award of $7,500 for Plaintiffs Caballero, Creasman, Wilhelm, and Luna out of the Settlement Fund. "In the Ninth Circuit, an incentive award of $5,000 is 'presumptively reasonable,'" and may be adjusted up or down depending on effort. *Sonoma Sol LLLP v. Truck Ins. Exch.*, No. CV-20-00069-PHX-DJH, 2021 WL 5238711, at *6 (D. Ariz. Nov. 9, 2021) (citations omitted). Here, a slightly higher award is reasonable. Each plaintiff has been actively involved in this litigation and without their willingness to come forward and prosecute the action, the Settlement Class Members would have received nothing for their injuries. Plaintiffs spent significant time assisting Class Counsel in investigating and prosecuting this action. Carey Decl. ¶ 41. Plaintiffs each assisted with drafting their factual allegations in the Complaint, responded to discovery in the cases where it was served and were involved in the settlement process. *Id.* Given the Plaintiffs' efforts and the significant amount the Class Members will receive, an award of $7,500 per Plaintiff is reasonable. *See Julian v. Swift Transportation Co. Inc.*, No. CV-16-00576-PHX-ROS, 2020 WL 6063293, at *3 (D. Ariz. Oct. 14, 2020) (finding award of $15,000 reasonable where plaintiff traveled to Phoenix for his deposition and in light of amount other class members would receive). Class Counsel will more fully support this request in their motion for attorneys' fees.

**D.    Notice and Implementation of Settlement.**

Plaintiffs have attached a proposed Settlement Class Notice and propose the following plan for the dissemination of that Notice. Ex. 3, Proposed Notice. Plaintiffs propose notifying the Settlement Class, which consists of 172 Settlement Class Members, via first class U.S. mail. For Settlement Class Members whose addresses are unavailable, notice shall be sent by email. Ex. 1, Settlement Agreement ¶ 33. Plaintiffs propose using

15

Epiq Class Action & Claims Solutions, Inc. ("Epiq") along with Epiq's Notice business unit, Hilsoft Notifications ("Hilsoft") as the Settlement Administrator. *Id.* ¶ 20.

Farmers Defendants will provide to Epiq and Class Counsel the names, addresses, email addresses, and phone numbers for all members of the Settlement Class. *Id.* ¶ 53. Using that data, Epiq will mail the Notice form to all Settlement Class Members. *Id.* ¶ 55. With the Court's approval, Class Counsel will also contact the Settlement Class Members to provide information or answer questions that will aid "prospective class members in deciding whether or not to join the class action." *Kleiner v. First Nat. Bank of Atlanta*, 102 F.R.D. 754, 769 (N.D. Ga. 1983). Additional details on the notice plan are set forth in Section C below.

Notice is also required under the Class Action Fairness Act, 28 U.S.C. § 1711 *et seq.* That notice will be provided to the appropriate state and federal officials no later than ten days after the filing of this Motion. The cost of notice will be paid out of the Settlement Fund, which amount is included in the estimated costs of administration above.

**E.    Plan of Distribution**

Plaintiffs propose sending checks to every member of the Settlement Class, with the "Net Settlement Fund" (the Settlement Fund less attorneys' fees, costs, and any incentive award) being distributed among the Settlement Class in accordance with the allocated percentages as described in the Settlement Agreement. Settlement Agreement ¶ 45. Class Counsel, in consultation with experts, will calculate an "Initial Allocation" for each of Settlement Class Members.[7] *Id.* ¶ 45. The Initial Allocation is based on the assessment of the economic losses of the Class, individual policy limits and available benefits, the time of loss, appropriate reductions for known defenses, information

---

[7] The Initial Allocation will be added to Exhibit A to the Settlement Agreement. Those percentages, which are not currently listed, will be available by the time notice is sent to the Settlement Class. Each Class Member will also be informed of their projected claim value in the Notice. Ex. 3, Notice ¶ 10.

expected to be adduced from the class members, as well as payments already received by the Settlement Class Members. Carey Decl. ¶ 42.

After the deadline for Class Members to request exclusion has passed and the exclusions are known, the Settlement Fund will be reduced for each Class Member who has requested exclusion, by the percentages of their Initial allocation. Settlement Agreement ¶ 62. Class Counsel will proportionally recalculate the percentage allocation of the Net Settlement Fund for the remaining Settlement Class Members, to reflect the reduction in the number of Settlement Class Members and reduced Settlement Fund. *Id.* ¶ 44. Class Counsel will attach that "Final Allocation" to the Motion for Final Approval, which will represent each Settlement Class Member's share of the Net Settlement Fund. *Id.*

After the Settlement receives Final Approval, Epiq will mail checks via U.S. Mail to each of the Settlement Class Members, in the proportions set forth in the Final Allocation. *Id.* ¶ 45. If there are unclaimed funds, the parties agree to meet and confer on whether to do a second distribution to the Settlement Class or to distribute those funds to a *cy pres* recipient. *Id.* ¶ 48. The parties also agree to meet and confer on the identity of the *cy pres* recipient. *Id*. Any proposed subsequent distribution, either to the Settlement Class or to a *cy pres* recipient, will then be submitted to the Court for approval. *Id.* The Parties agreed in the Settlement Agreement that there will be no reversion of unclaimed funds to the Farmers Defendants. *Id.*

## IV.    ARGUMENT

"The Ninth Circuit has declared a strong judicial policy that favors settlement of class actions." *Zwicky v. Diamond Resorts Mgmt. Inc.*, 343 F.R.D. 101, 112 (D. Ariz. 2022) (citing cases). Where parties reach settlement before class certification, courts must approve both the fairness of the settlement and the "propriety of certification." *Id.* Here, the Settlement Class should be certified under Federal Rule of Civil Procedure 23(b)(3) and the settlement is "fair, reasonable, and adequate" under Rule 23(e).

1    **A.    The Class should be certified for the purposes of settlement.**

2       "A class action will only be certified if it meets the four prerequisites identified in

3    Federal Rule of Civil Procedure ("Rule") 23(a) and additionally fits within one of the

4    three subdivisions of Rule 23(b)." *Zwicky*, 343 F.R.D. at 113. Rule 23(a) requires the

5    Court to examine whether: (1) the class is so numerous that joinder of all members is

6    impracticable, (2) there are questions of law and fact common to the class, (3) the claims

7    and defenses of the representative parties are typical of the claims and defenses of the

8    class, and (4) the representative parties will fairly and adequately protect the class. Fed.

9    R. Civ. P. 23(a)(1)-(4). Rule 23(b)(3) requires the Court to determine whether "questions

10   of law or fact common to class members predominate over any questions affecting only

11   individual members, and that a class action is superior to other available methods." Fed.

12   R. Civ. P. 23(b)(3). Plaintiffs can show that the Settlement Class meets the requirements

13   of Rules 23(a) and (b)(3) and should be certified for the purpose of settlement.

14       **1.    The Settlement Class is sufficiently numerous.**

15       This class has 172 members, which easily meets the numerosity standard.

16   Numerosity is not "tied to any fixed numerical threshold." *Zwicky*, 343 F.R.D. at 114; *see*

17   *also Newberg on Class Actions* § 3:12 (5th ed.); *Winkler v. DTE, Inc.*, 205 F.R.D. 235,

18   239 (D. Ariz. 2001). "[N]umerosity is met when general knowledge and common sense

19   indicate that joinder would be impracticable." *Knapper v. Cox Commc'ns, Inc.*, 329

20   F.R.D. 238, 241 (D. Ariz. 2019). Plaintiffs satisfy the numerosity requirement under Rule

21   23(a)(1) because the proposed class includes at least 171 members, and because joinder

22   of these class members is "impractical" as required by Fed. R. Civ. P. 23(a)(1).

23       Beyond the wasteful inefficiency of joining 172 individuals in a single action,

24   joinder is impracticable because the individual claimants have no practical means to

25   pursue separate suits. Economy Preferred's corporate representative and adjuster testified

26   that there has been no effort to notify them of underpayments. *See Caroline C. By &*

27   *Through Carter v. Johnson*, 174 F.R.D. 452, 463 (D. Neb. 1996) ("Potential lack of

28   knowledge and sophistication of the class members place them in a poor position to seek

legal redress individually."). Further, "courts have relaxed the numerosity requirement" where parties seek certification under Rule 23(b)(2), as Plaintiffs do here. *Bublitz v. E.I. du Pont de Nemours and Co.*, 202 F.R.D. 251, 255–56 (S.D. Iowa 2001). All of the above factors demonstrate that numerosity is met. *See Rannis v. Recchia,* 380 F. App'x 646, 650 (9th Cir. 2010) ("The district court likewise did not abuse its discretion in determining that the class of 20 satisfies the numerosity requirement.").

### 2.    Questions of law and fact are common to the settlement class.

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality exists where class members' 'situations share a common issue of law or fact and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief.'" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (citation omitted). "Because the Ninth Circuit construes commonality liberally, it is not necessary that all questions of law and fact be common. The commonality requirement is met when the common questions it has raised are apt to drive the resolution of the litigation." *Zwicky*, 343 F.R.D. at 114 (internal quotation, alteration, and citations omitted).

Commonality is satisfied here. Similar factual allegations apply to each of the proposed Settlement Class Members. Plaintiffs allege that all Settlement Class Members purchased a policy issued by the Farmers Defendants in Arizona that included multi-vehicle UM/UIM coverage and the same or substantially same limitation-of-liability policy language. Plaintiffs further allege that each Settlement Class Member requested UM/UIM coverage from the Farmers Defendants but only received the policy limit for one covered vehicle. Plaintiffs also allege that the Farmers Defendants did not provide the required notice under A.R.S. § 20-259.01(H) to the Settlement Class Members, either through the policy language or by separate written notice.

Plaintiffs' causes of action are also identical for the Settlement Class. Plaintiffs' claims for breach of contract and breach of the covenant of good faith and fair dealing all ask the same question: Whether the Farmers Defendants breached their contracts with the

Settlement Class when they failed to provide the Settlement Class Members with stacked coverage, after not providing the notice required by A.R.S. § 20-259(H) either in the policy or by separate letter. *See McClure v. State Farm Life Ins. Co.*, 341 F.R.D. 242, 250 (D. Ariz. 2022) ("Plaintiff has satisfied the commonality requirement because each claim is based on a form contract and a uniform course of conduct towards each policyholder by State Farm."). And, as the insurance policies were all issued in Arizona, Arizona law controls and applies to each member of the Settlement Class. Commonality is met in this case.

### 3.    Plaintiffs' claims are typical of the Settlement Class's claims.

"Typicality requires that the named plaintiff have claims 'reasonably coextensive with those of absent class members,' but the claims do not have to be 'substantially identical.'" *Zwicky*, 343 F.R.D. at 115 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). "The test for typicality 'is whether other members have the same or similar injury, whether the action is based on conduct, which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Plaintiffs have no individual claims that differ from the Settlement Class's claims. Plaintiffs each had a Farmers policy that provided UM/UIM coverage on more than one vehicle,  requested UM/UIM coverage from his or her respective insurer  that exceeded the limit of UM/UIM coverage on one vehicle, each alleges their insurer did not provide the required statutory notice to prevent stacking and allow the insured to choose UM/UIM coverage, and each plaintiff only received payment in the amount of the single (one-vehicle) UM/UIM limit. Like Plaintiffs, all Settlement Class Members had policies issued by the Farmers Defendants that provided UM/UIM coverage for more than one vehicle, they requested UM/UIM coverage from the Farmers Defendants. The Farmers Defendants allegedly did not provide them the required statutory notice to prevent stacking and allow them to choose their UM/UIM coverage, and they only received

MOTION FOR PRELIMINARY APPROVAL

UM/UIM coverage for one vehicle. Plaintiffs' claims all sound in contract and bad faith, alleging that the Farmers Defendants each breached their contractual obligations and the duty of good faith by not paying for additional UM/UIM coverage. The Settlement Class Members have breach of contract and bad faith claims that are identical to those of Plaintiffs. Plaintiffs meet the typicality requirement.

4.      **Plaintiffs and Class Counsel are adequate representatives.**

"To resolve the question of legal adequacy, the Court must answer two questions: (1) do the named plaintiff and her counsel have any conflicts of interest with other class members and (2) has the named plaintiff and her counsel vigorously prosecuted the action on behalf of the class?" *Zwicky*, 343 F.R.D. at 116 (citing *Hanlon*, 150 F.3d at 1020). "This adequacy inquiry considers a number of factors, including 'the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'" *Id.* (citing *Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992)). "The adequacy-of-representation requirement tend[s] to merge with the commonality and typicality criteria of Rule 23(a)." *Id.* (quoting *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997)).

There are no conflicts of interest between Plaintiffs and Class Counsel and the Settlement Class. As shown above, commonality and typicality are met, showing there are no conflicts between Plaintiffs and the Settlement Class. *See Zwicky*, 343 F.R.D. at 116 (finding no conflict where commonality and typicality are met). And Class Counsel has no conflict with the Settlement Class, having litigated this case and related cases, including *Franklin*, which yielded a favorable decision for Arizona insureds.

"The second prong of the adequacy inquiry examines the vigor with which Plaintiffs and their counsel have pursued the common claims*." Zwicky*, 343 F.R.D. at 116. Here, Plaintiffs have fulfilled their duties as class representatives, assisting with the litigation when asked. Hagens Berman Sobol Shapiro LLP is adequate counsel. Hagens Berman has extensive experience in complex and class-action litigation, including

MOTION FOR PRELIMINARY APPROVAL

insurance litigation. Ex. 4, Hagens Berman Firm Resume. And it has adequately litigated this case, getting a favorable decision in *Franklin*, which has benefited the Settlement Class Members here. Adequacy is met.

### 5.    Common questions of law and fact predominate under Rule 23(b).

A class action may be maintained under Rule 23(b)(3) if (1) "the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Zwicky*, 343 F.R.D. at 117 (quoting Fed. R. Civ. P. 23(b)(3)). This case meets both the predominance and superiority requirements needed for class certification.

### a.    Common questions predominate in this case.

"Because Rule 23(a)(3) already considers commonality, the focus of the Rule 23(b)(3) predominance inquiry is on the balance between individual and common issues." *Zwicky*, 343 F.R.D. at 117. "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012)); *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 467 (2013) (when an issue in the case can be proven through evidence common to the class, it is a "'common questio[n]' for purposes of Rule 23(b)(3)"). Here individual issues do not outweigh common issues. As established above, the facts and legal issues are common to the class. Plaintiffs contend liability can be established by the policy forms and standardized letters; and where there is a form insurance contract with common treatment of the class members, predominance is typically met. *See McClure*, 341 F.R.D. at 252 (finding predominance in breach-of-contract claim against insurance company, noting a "claim for breach of a standard form contract or company policy often may be suitable for class-wide treatment" (quoting

*Garza v. Gama*, 379 P.3d 1004, 1007 (Ariz. Ct. App. 2016))). Thus, the only question is whether there any individual issues outweigh these common issues.

As *Amgen* correctly notes, when the proof is common, individualized issues do not predominate because the result is simply that, if the class fails in its proof, its claim will fail and "there will be no remaining individual questions to adjudicate." *Amgen*, 568 U.S. at 469. Here, if the case was litigated, Plaintiffs contend liability and causation would be established by each class member using the same evidence, rendering it suitable for class treatment and leaving the merits determination for the factfinder.

Moreover, "[w]hen 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods,* 577 U.S. at 453 (quoting 7AA C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 1778 at 123–24 (3d ed. 2005)). In settlement classes, whether a class is sufficiently cohesive to satisfy predominance "is informed by whether certification is for litigation or settlement." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019). The result is that, in settlements such as this, "the district court need not consider trial manageability issues." *Id.* at 563.

While each Settlement Class Member has varying damages, those issues do not create a predominance problem. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 668–69 (9th Cir) ("[W]e have held that a district court is not precluded from certifying a class even if plaintiffs may have to prove individualized damages at trial, a conclusion implicitly based on the determination that such individualized issues do not predominate over common ones."); *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1121 (9th Cir. 2017) ("That some individualized calculations may be necessary does not defeat finding predominance."). Damages can still be calculated on a classwide basis using a set formula or statistical estimations, as was done here. *In re Pharm. Indus. Average Wholesale Price Litigation*, 582 F.3d 156, 197–98 (1st Cir. 2009).

23

1    Indeed, "the use of aggregate damages calculations is well established in federal court

2    and implied by the very existence of the class action mechanism itself." *Id.* at 197.

3          For purposes of determining the aggregate award, Class Counsel considered a

4    variety of methodologies to estimate the payments the Farmers Defendants would have

5    paid had appropriate available-benefits limits been applied. Carey Decl. ¶ 43. Class

6    Counsel relied on several customized statistical models that drew on Kaplan–Meier

7    curves, maximum likelihood estimations of censored claim data (product limit

8    estimators), single and double component Weibull distributions, and mixed models

9    designed to fit case data and other settlement data to the appropriate curves. *Id.* ¶ 44. The

10   results of these efforts were then stratified to reflect policy limits and the date of loss for

11   each claim. *Id*. ¶ 45.

12         Class Counsel has developed and will apply a reasonable formula to allocate each

13   Settlement Class Member an appropriate share of the Settlement Fund. *Id.* ¶ 46. Using as

14   a baseline data provided by the Farmers Defendants, that formula will account for, at a

15   minimum, the date of the claim, the amount of UM/UIM coverage available, defenses

16   based on limitations or release, and information provided by and/or adduced from the

17   Class Members that indicates the value of the claim. *Id.* ¶ 47. The Class is entitled to

18   prove its aggregate damages using statistical estimates, and then allocate a share of the

19   recovery to each class member using any reasonable method to determine individual

20   allocations. *See Olean Wholesale Grocery Coop., Inc.*, 31 F.4th at 668–69 (individualized

21   damages do not create predominance issue); *In re Pharm. Indus. Average Wholesale*

22   *Price Litigation*, 582 F.3d at 197 (approving use of aggregate damages in class actions).

23   Here, the Class can rely on preexisting data that ascertain relative exposures for each

24   claim, and also a methodology based on date of loss and amount of coverage, at a

25   minimum, and as adjusted during the claims process. Predominance is met in this case.

26

27

28

1

2

               **b.**      **Litigating this case as a class action is superior to individual adjudications.**

This case also meets the requirement that a class action be "superior" to individual

3

adjudications. "[T]he purpose of the superiority requirement is to assure that the class

4

action is the most efficient and effective means of resolving the controversy." *Wolin*, 617

5

F.3d at 1175 (citation omitted). "Where classwide litigation of common issues will

6

reduce litigation costs and promote greater efficiency, a class action may be superior to

7

other methods of litigation." *Zwicky*, 343 F.R.D. at 118 (quoting *Valentino v. Carter-*

8

*Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)). Here a class action will reduce

9

litigation costs and promote greater efficiency. Having 172 members file individual

10

cases—particularly where the causes of action are basically identical—would increase

11

litigation costs, waste party resources, and waste the Court's resources. *See McClure*, 341

12

F.R.D. at 254 (finding superiority where "case involves the interpretation of a form

13

contract, the interpretation of which will apply to all class members making class action

14

an efficient form of adjudication"). A class action provides a superior vehicle for

15

resolving their claims.

16

**B.**     **The proposed settlement should be preliminarily approved.**

17

Federal Rule of Civil Procedure 23(e) requires judicial approval of any settlement

18

of class action claims. Preliminary approval is appropriate "where the proposed

19

settlement does not disclose grounds to doubt its fairness and lacks 'obvious

20

deficiencies.'" *Zwicky*, 343 F.R.D. at 119–20 (citations omitted). In determining whether

21

a settlement is fair, reasonable, and adequate at the preliminary approval phase, "courts

22

need only evaluate whether the proposed settlement (1) appears to be the product of

23

serious, informed, non-collusive negotiations, (2) has no obvious deficiency, (3) does not

24

improperly grant preferential treatment to class representatives or segments of the class

25

and (4) falls within the range of possible approval." *Id.* at 119 (cleaned up). Each of these

26

factors weighs in favor of approving the settlement.

27

28

MOTION FOR PRELIMINARY APPROVAL

1    **1.    The settlement is the result of arm's-length negotiations.**

2    Weighing in favor of preliminary approval, the settlement arises out of informed,

3    arm's length negotiations among counsel for the parties. The parties reached agreement

4    after Class Counsel obtained a ruling from the Arizona Supreme Court in *Franklin* that

5    established that insurance companies must stack UM/UIM coverage where an insurer did

6    not provide the required notice to select coverage. The Farmers Defendants opposed

7    Class Counsel's efforts in *Franklin* by filing an amicus brief, making it well versed with

8    the court's ruling that insurers were required to stack coverage if they did not give the

9    required notice under A.R.S. § 20-259.01(H). As the Arizona Supreme Court has decided

10    some of the key legal issues in the case, the only outstanding factual issues in this case

11    are whether the Farmers Defendants provided the required notice under A.R.S. § 20-

12    259.01(H) and, if not, whether the Farmers Defendants' insureds were paid for stacked

13    coverage. Rather than litigate further, the Farmers Defendants and Plaintiffs engaged in

14    two separate mediations, the first with the Hon. Wayne Andersen (ret.) and the second

15    with Michael N. Ungar—two mediators well versed in insurance claims handling and

16    class action issues—and reached a settlement that benefits both sides.

17    "Particularly with settlements reached prior to class certification, enough

18    information must exist for the Court to assess 'the strengths and weaknesses of the

19    parties' claims and defenses ... and consider how class members will benefit from

20    settlement' to determine if it is fair and adequate. *Zwicky*, 343 F.R.D. at 120 (citations

21    omitted). "In considering a proposed settlement, a court therefore bears an obligation to

22    first evaluate the scope and effectiveness of the investigation plaintiff's counsel

23    conducted prior to reaching an agreement." *Id.* Even though this case was settled before

24    class certification, the Court can assess the strengths and weaknesses of Plaintiffs' claims

25    and the Farmers Defendants' defenses based on the decision in *Franklin* and the

26    extensive discovery and analysis conducted in anticipation of briefing class certification.

27    Relying on the ruling in *Franklin*, Plaintiffs contend they have a strong case for

28    breach of contract by establishing that the Farmers Defendants did not provide the

required notice under A.R.S. § 20-259.01(H) and that the Farmers Defendants did not stack coverage. Nothing in Plaintiffs' policies advises of their right to select coverage, and none of Plaintiffs received a separate letter from any of the Farmers Defendants. While the Farmers Defendants deny liability, the Arizona Supreme Court held that insurers "seeking to prevent insureds from stacking UIM coverages under a single, multi-vehicle policy must employ subsection (H)'s sole prescribed method for limiting stacking." *Franklin*, 532 P.3d at 1146. The court went on to describe what is required: "[I]nsurers must (1) expressly and plainly limit stacking in the policy and (2) satisfy the notice requirement informing the insured of their right to select one policy or coverage either in the policy itself or in writing to the insured within thirty days after the insurer is notified of the accident." *Id.* at 1148 (citations omitted). In settling this case, the Farmers Defendants identified all Settlement Class Members who made a claim for UM/UIM benefits and exhausted the single (unstacked) policy limit under a multi-vehicle policy. Based on each Farmers Defendant's policy language and claim records, Plaintiffs contend they could show, if the case proceeded, that Class Members did not have the required policy language and did not receive notice. Additionally, Plaintiffs can show that the Farmers Defendants did not stack their coverage. While the Farmers Defendants deny liability, it again identified all Settlement Class Members who did not receive stacked coverage.

Based on this information, the Court should find that the settlement is based on an informed, arm's-length negotiation.

### 2.    The settlement has no obvious deficiencies.

There are no obvious deficiencies in the proposed settlement. The Ninth Circuit has pointed to three factors as troubling signs of a potential disregard for the class's interests during the course of negotiating and pre-certification settlement: (1) when class "counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;" (2) "when the parties negotiate a 'clear sailing' arrangement that provides for the payment of attorneys'

27

fees separate and apart from class funds;" and (3) when the parties arrange for fees not awarded to class counsel to revert to the defendants rather than the class. *In re Bluetooth Headset Prods. Liability Litig*.654 F.3d 935, 947 (9th Cir. 2011); *see also Zwicky*, 343 F.R.D. at 121 (same). None of those deficiencies are present here.

Here, the Settlement Class will receive a majority of the Settlement Fund. In fact, each of the Settlement Class Members will receive a significant recovery. There is no clear sailing provision. Rather, reasonable attorneys' fees will be awarded out of the Settlement Fund as determined by the Court. Last, there is no reversion to the Farmers Defendants for unclaimed funds. If a Class Member does not claim his or her funds— which is unlikely given the nature of the relief and the robust notice procedures proposed—the Settlement Agreement requires the parties to meet and confer about whether it is financially feasible to redistribute those funds to the remaining Settlement Class Members or select a *cy pres* recipient. Settlement Agreement ¶ 48. And any such decision must be approved by the Court. *Id*. None of the *Bluetooth* deficiencies are present in this case.

### 3.    The proposed settlement does not grant preferential treatment to Plaintiffs or segments of the Settlement Class.

There is no preferential treatment for Caballero, Creasman, Wilhelm, or Luna in the proposed settlement. Plaintiffs will each request a modest incentive fee of $7,500, which is the standard incentive fee award. *Sonoma Sol LLLP*, 2021 WL 5238711, at *6. "To assess whether an incentive payment is excessive, district courts balance 'the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment.'" *Zwicky*, 343 F.R.D. at 123 (quoting *Staton*, 327 F.3d at 977). Here, the combined incentive awards constitute approximately 0.25% of the Settlement Fund. The settlement does not give Plaintiffs preferential treatment; in fact, Plaintiffs sacrificed what they could have recovered in individual litigation to ensure the entire class was compensated.

28

There also is not any preferential treatment for segments of the Settlement Class. Each Settlement Class Member's damages will be based entirely on each Class Member's possible damages and the amount of available UM/UIM coverage they had. While the damages among Settlement Class Members will vary, that variation will be due to the varying UM/UIM coverage and possible damages. The proposed settlement is fair to the Settlement Class.

### 4. The settlement falls within the range of possible approval.

To determine whether a settlement 'falls within the range of possible approval,' courts focus on 'substantive fairness and adequacy' and 'consider plaintiffs' expected recovery balanced against the value of the settlement offer.'" *Zwicky*, 343 F.R.D. at 124 (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)). "The Ninth Circuit in particular 'puts a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution, and has never prescribed a particular formula by which that outcome must be tested." *B.K. by next friend Tinsley v. Faust*, No. CV-15-00185-PHX-ROS, 2020 WL 6048315, at *2 (D. Ariz. Oct. 13, 2020) (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)). "Estimates of what constitutes a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 322 (N.D. Cal. 2018).

Class Counsel ran several models to predict the settlement value, and used those models to cross-check the value of this Settlement. Carey Decl. ¶ 48. Class Counsel also took into account the nature of the policies and Class relative to the experience gained in evaluating other cases based on this theory. *Id.* ¶ 49. Counsel has seen various demographics, market niches, and loss estimates, and used that insight to help value these claims. *Id.* ¶ 50.

The settlement amount of $11.6 million compares favorably with the projected value of Class Members' UM/UIM claims as calculated under the stacked limit instead of the single limit, constituting 128% of the projected value of the classwide insurance

claims. The settlement was the product of an arms-length, non-collusive negotiation. *Supra* section VI.B.1. And given the risks and time associated with continued litigation, the possibility that the Settlement Class could recover less at trial, and the possibility of an appeal if they do prevail, $11.6 million represents a fair, reasonable, and adequate settlement.

### 5. The experience and views of counsel weigh in favor of preliminary approval.

Class Counsel's judgment that this settlement is fair and reasonable is entitled to significant weight. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (citation omitted). This is particularly true here where Class Counsel are not only experienced class attorneys, but experts in insurance cases and insurance class actions. *See Reid v. I.C. Sys. Inc.*, No. CV-12-02661-PHX-ROS, 2018 WL 11352039, at *3 (D. Ariz. July 27, 2018) (giving counsel's recommendations a "presumption of reasonableness," where class counsel had sufficient expertise in class actions and consumer protection cases), *aff'd*, 795 F. App'x 509 (9th Cir. 2019); *see also* Hagens Berman Firm Resume (showing class and insurance experience). Class Counsel's experience and recommendation supports a finding that the settlement is fair, reasonable, and adequate.

### C. The Proposed Class Notice and Plan for Dissemination Comply with Rule 23(e)

Rule 23(e)(1) requires that a court approving a class action settlement must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). In addition, for a Rule 23(b)(3) class, the court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). A class action settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill.*,

1   *LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citations omitted); *see also* Fed. R.

2   Civ. P. 23(c)(2)(B) (describing specific information to be included in the notice).

3          The proposed plan for disseminating notice provides direct notice to the

4   Settlement Class as required by Rule 23(e)(1)(B). Using the Class Members' contact

5   information from Defendants, notice will be sent via USPS first class mail. Settlement

6   Agreement ¶¶ 14, 32. If no valid address is available, notice will alternatively be sent by

7   email to Class Members with valid email addresses. *Id.* Given the size and variation

8   among the Class Member's recoveries, Class Counsel also requests approval from the

9   Court to contact the Settlement Class Members directly. Once notice is sent to a

10  prospective class member an "attorney-client relationship exist[s] for the purpose of

11  aiding prospective class members in deciding whether or not to join in the class action."

12  *Kleiner v. First Nat. Bank of Atlanta*, 102 F.R.D. 754, 769 (N.D. Ga. 1983), *aff'd in part,*

13  *vacated in part on other grounds*, 751 F.2d 1193 (11th Cir. 1985). Class Counsel fulfills

14  their responsibility "by providing neutral, objective information and advice" about

15  whether to join or exclude themselves from the class action. *Id.* at 769 n.20. Because this

16  is a small Settlement Class and most of the recoveries will be large, Class Counsel may

17  contact Settlement Class Members to answer any questions about the settlement, to

18  provide neutral information about whether to stay in the Settlement Class, get additional

19  information from the Class Members about medical expenses and lost wages to

20  accurately assess their allocation, and to provide Settlement Class Members with any

21  requested documents (such as the Complaint, Answer, Motion for Preliminary Approval,

22  or Motion for Attorneys' fees). In contacting the Settlement Class Members, Class

23  Counsel have consulted with ethics counsel about their ethical duties and to ensure

24  compliance with all ethical rules, including Rule 4.2 of the Arizona Rules of Professional

25  Conduct, Communications with Person Represented by Counsel, as some of the

26  Settlement Class Members were previously represented by counsel in relation their

27  individual claims.

28

MOTION FOR PRELIMINARY APPROVAL

The proposed Notice contains all the information required by Rule 23(c)(2)(B) to the Settlement Class, in language that is plain and easy to understand. *See generally* Proposed Notice. The proposed Notice features a prominent headline and is identified as a Notice from the District Court. *Id.* at 1. The Notice includes information about the lawsuit and settlement, including Plaintiffs' claims, the definition of the Settlement Class, the amount of the Settlement, how much each Settlement Class Member will receive from the settlement, the right to object, the right to request exclusion, how to attend the final fairness hearing, contact information for Class Counsel, and the settlement website where Class Members can obtain additional case information. *Id.* ¶¶ 1, 5, 7–10, 12, 14, 16, 20–22. The Notice alerts recipients that the Notice is an important document authorized by a court and that the content may affect them, thereby supplying reasons to read the Notice, visit the settlement website, or contact Class Counsel for additional information. *Id.* at 1.

To assist potential Class members in understanding the information concerning the lawsuit and their rights, Epiq will use a dedicated and case-specific website. *Id.* ¶ 23. Class Members will be able to obtain detailed information about the case and review key documents, including the Consolidated Complaint, the Answer, important court documents, and the Settlement Agreement. *Id.* ¶¶ 1–2, 4, 17, 23. The case website address will be displayed prominently the Notice. *Id.*

Finally, Class Counsel proposes that the deadline for Settlement Class Members to request exclusion from the Settlement Class or object to the settlement be set 60 days after the start of the direct Notice Campaign ("Notice Start Date"), which also follows the recommendations of the Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide.

These notice provisions meet the requirements of Rule 23. They will allow the Settlement Class a full and fair opportunity to review and respond to the proposed settlement.

MOTION FOR PRELIMINARY APPROVAL

**D.      Proposed Schedule for Dissemination of Notice and Final Approval**

Plaintiffs propose the following schedule for the dissemination of class notice and final approval:

| Event | Proposed Deadline |
|---|---|
| Settlement Class Data provided to Epiq | No later than 30 days after entry of preliminary approval order |
| Notice Start Date | No later than 60 days after entry of preliminary approval order |
| Last day for motion for attorneys' fees, costs, expenses, and service awards | No later than 30 days after the Notice Start Date |
| Last day for objections to settlement | Filed or received 60 days after the Notice Start Date |
| Last day for requests for exclusion from the Settlement Class | Filed or received 60 days after the Notice Start Date |
| Last day to file motion in support of final approval of settlement | 14 days after objection/exclusion deadline |
| Fairness Hearing | 30 days after motion for final approval is filed, unless otherwise ordered by the Court |

## V.      CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court preliminarily approve the Settlement with the Farmers Defendants, certify the Settlement Class, appoint Plaintiffs Caballero, Creasman, Wilhelm, and Luna as Settlement Class Representatives, appoint Hagens Berman as Class Counsel, and direct notice in the form and manner, and on the schedule, proposed here.

MOTION FOR PRELIMINARY APPROVAL

1

Dated: November 27, 2024

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted by,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: _s/ Robert B. Carey_
    Robert B. Carey
    John M. DeStefano
    Michella Kras

THE SLAVICEK LAW FIRM
    Brett L. Slavicek
    James Fucetola
    Justin Henry

*Attorneys for Plaintiffs*

MOTION FOR PRELIMINARY APPROVAL