Robert B. Carey (SBN 011186)
John M. DeStefano (SBN 025440)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email:  rob@hbsslaw.com
         johnd@hbsslaw.com

*Attorneys for Plaintiff*

*[Additional counsel on signature page]*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Jesus Caballero,<br><br>                    Plaintiff,<br><br>v.<br><br>Economy Preferred Insurance Company, et al.,<br><br>                    Defendants. | Nos.  CV-22-02023-PHX-MTL<br>         CV-22-01820-PHX-MTL<br>         CV-24-01267-PHX-MTL<br>         CV-24-01270-PHX-MTL<br><br>[Consolidated]<br><br>**PLAINTIFFS' CONSOLIDATED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF THE SETTLEMENT CLASS**<br><br>(Honorable Michael T. Liburdi) |

## I.  INTRODUCTION

Nothing has changed since the Court preliminarily approved this Settlement. The Settlement Agreement remains fair, reasonable, and adequate. The $11,600,000 cash payment provides a significant recovery for the Class, which consists of only 166[1] Class members.[2] *See* ECF No. 108 at 15; Declaration of Lucas Q. Meyer Regarding Implementation of Notice and Settlement Administration ("Meyer Decl.") ¶¶ 6–7 (attached as Exhibit A).

The Settlement is well-received by the Class Members. Direct notice to the Class was extremely successful, with 100% of the 166 Class Members receiving notice. *Id.* ¶ 14. No Class Member filed an opposition. *Id.* ¶ 19. And no Class Member opted out. *Id.* ¶ 18. Every member of the Class has chosen to stay and benefit from the Settlement. And, importantly, every class member will get their recoveries delivered without any action required by them.

Because nothing has changed since preliminary approval and the Class reception has been overwhelmingly positive, the Court should grant final approval.

## II.  THE SETTLEMENT SHOULD BE APPROVED

**A.  Notice under Rule 23 has been satisfied.**

This Court previously approved the proposed notice plan as meeting the requirements of Rule 23. ECF No. 109 at 3–4. In compliance with that plan, Epiq, the Settlement Administrator, posted copies of the Settlement Agreement and the Preliminary Approval Order, as well as the Notice and Motion for Preliminary Approval to the settlement website on March 6, 2025. Meyer Decl. ¶¶ 2,15. Epiq also posted FAQs to the

---

[1] While the preliminary approval motion reflects 172 Class Members, in reviewing the data provided by counsel for Defendants, Class Counsel determined that only 166 person(s) are qualified class members.

[2] Even after paying Class Counsel 30% of the settlement fund, paying for costs, and paying an incentive award, the Class will receive over $7.8 million.

- 1 -

MOTION FOR FINAL APPROVAL

settlement website. *Id.* ¶ 15. Epiq posted a copy of the Motion for Attorneys' Fees, Expenses, and Service Awards to the settlement website on April 24, 2025. *Id.* ¶ 16.

As directed by this Court, Epiq sent the first notice of the Settlement to the Class on March 7, 2025. *Id.* ¶¶ 9–12. As of May 13, 2025, Epiq successfully mailed both notices to all 166 Class Members, with no notices known to be undeliverable, or a 100% deliverable rate on both mailed notices. *Id.* ¶¶ 13–14. In other words, 100% of the Class members have received direct notice by mail in the revised form approved by this Court. *Id.* The total cost of notice to the Class was $16,000.00 with an additional $112,050.00 to be spent by Epiq on resolving any Medicare liens and processing payments to Class Members. *Id.* ¶ 20.

No Class Members requested to be excluded and no Class Members have filed an objection to the Settlement. *Id.* ¶¶ 18–19.

**B.     The Settlement is fair, reasonable, and adequate.**

In granting final approval of a proposed class action settlement, the Court must determine whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 830 (N.D. Cal. 2017) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). Plaintiffs addressed the first six factors in their Consolidated Motion for Preliminary Approval and incorporate those arguments by reference. *See* ECF No. 108. Because nothing has changed since they filed that Motion, Plaintiffs will not repeat those arguments here, other than to provide additional information about how classwide damages were calculated. *Id*. The two factors Plaintiffs

did not address at preliminary approval—the presence of a governmental participant and the reaction of the Class—also weigh in favor of granting final approval of the Settlement.

### 1. The presence of a government participant.

There is no governmental participant in this case. Defendants, through the Settlement Administrator Epiq, provided CAFA notice of the proposed Settlement, and no government entity has raised an objection. *See* Meyers Decl. ¶ 5, Attachment 1, CAFA Decl. "The lack of objections favors settlement." *Knapp*, 283 F. Supp. 3d at 833.

### 2. Reaction of the Class Members.

The reaction of the Class has been overwhelmingly positive and weighs in favor of approval. Every Class Member received Notice in this case, but not a single Class Member has opted out or filed an objection.

First, that 100% of the Class stayed and accepted the Settlement provides an "objective positive commentary as to its fairness" and weighs in favor of approval. *Knapp*, 283 F.Supp.3d at 834 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)). Second, that **no** Class Members have objected "raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members" and weighs in favor of final approval. *Id.* at 833–34; *see also J.L. v. Cuccinelli*, No. 18-CV-04914-NC, 2019 WL 6911973, at *3 (N.D. Cal. Dec. 18, 2019) (no objections to the settlement weigh in favor of final approval). The lack of objections and exclusions is particularly notable here, as many of the Class Members are receiving significant recoveries and would be motivated to object or opt out if they did not believe the settlement was fair. The Class Members' overall reaction to the Settlement supports approval.

### 3. Recovery by Class Members.

Plaintiffs' expert calculated classwide damages by estimating the economic loss resulting from the difference between actual settlement payments and the "but-for" payments under properly stacked policy limits. Statistical tools such as Kaplan-Meyer

3

analysis, Log-Rank testing, and a two-component Weibull mixture model were applied to analyze censored claim data and simulate expected settlement payments. Using this approach, Plaintiffs' expert calculated the aggregate damages the Class would be entitled to, if there were no breach, to be between $9.094 million and $15.266 million. However, this figure does not account for reductions that Defendants contend would be applied to Class Members' recoveries outside the context of this settlement. Such reductions would include untimely claims and signed releases; these defenses, which Plaintiffs recognize must be factored in when calculating the expected value of the class claims even if there are counterarguments to each, result in a reduction of approximately 30% for this type of population, resulting in a $6.37 to $10.686 million damages calculation. Similarly, the impact of general litigation risks and class certification risks, costs of litigation, and time value of money also reduce the value of the "but for" damages by 30%. Adjusting for both the aforementioned risks and defenses results in $3.64 million to $6.106 million in estimated damages. These elements, along with potential enhancements of damages and their relative values, will be further addressed at the final fairness hearing. But under any standard, the recovery here of $11.6 million substantially exceeds the risk-adjusted expected value of the claims (on the high end, $6.1 million) and will, absent something extraordinary, result in every Class Member actually receiving additional benefits without any claims hurdles.

C.  **Final Payment of the Settlement**

Because Plaintiffs are required to verify whether the Class Members have any Medicare or Medicaid liens, and pay those liens before making any final payment to Class Members, Plaintiffs request that the Court approve a timeline for payment that accounts for the time needed by Epiq to resolve those liens. More specifically, Plaintiffs request that the Court order Epiq to make all final payments to Class Members within thirty days (30) of the resolution of all applicable Medicare liens. Finally, Plaintiffs request that the Court approve the payment of Epiq's reasonable expenses to resolve the Medicare liens and distribute final payments.

### III.  CONCLUSION

Plaintiffs request that this Court enter an order granting final approval of the Settlement.

Dated: May 21, 2025

Respectfully submitted by,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: *s/ Robert B. Carey*
    Robert B. Carey
    John M. DeStefano
    Michella Kras

THE SLAVICEK LAW FIRM
    Brett L. Slavicek
    James Fucetola
    Justin Henry

*Attorneys for Plaintiffs*

5

MOTION FOR FINAL APPROVAL